UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,

                Plaintiff,                Criminal No. 06-330-HA

                                            OPINION AND ORDER

      v.

THEODORE WALLACE DENTON,

                Defendant.

_____

HAGGERTY, Chief Judge:

      In August 2006, defendant Theodore Wallace Denton (defendant) was indicted for felon in possession of a firearm and possession of cocaine, methamphetamine and marijuana, with

intent to distribute. Defendant filed a motion to suppress [14] on February 20, 2007. The government filed a response [18]. Testimony and oral argument regarding this motion were heard in court on March 22, 2007. Defendant then filed a Post-Hearing Memorandum in Support of Motion to Suppress [28], to which the government responded [31]. Defendant then filed a Reply [32]. After conducting the evidentiary hearing and reviewing the entirety of the briefing, defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

On July 16, 2006, officers of the Canby Police Department attempted to serve an arrest warrant on Kamara B. Kirk at her listed residence of 1400 S. Elm Street, Space 29, Canby, Oregon. Upon arriving at the residence, Officer Ethington saw a young woman inside a car parked in front of the residence. While speaking to this woman, identified as Jodi Jennings, another woman came out of the residence onto the patio. Officer Ethington identified this woman as Kamara Kirk, and, after confirming the arrest warrant, handcuffed her and placed her under arrest.

Kirk requested that she be able to put on shoes before leaving. Kirk was asked where her shoes were, and she replied that they were inside the residence. She then stated that she did not need her shoes. The officers advised her it would not be safe to walk outside and advised her she would need shoes. She then told the officers "go ahead" and consented for them to go into the house to accompany her to get a coat and shoes. Kirk testified that she went to jail another time without shoes.

Upon entering the living room with Kirk, officers saw a man later identified as defendant sitting at a desk, with his back to the officers. Officer Ethington testified that defendant turned

around immediately and seemed agitated that the officers were there. Office Ethington immediately recognized him as Theodore Denton, from an officer safety bulletin at the police department. Officer Ethington testified that Officer Britton asked defendant to stand up, for officer safety reasons. The defendant then yelled at the officers and used profanity in telling the officers to get out of his house. After repeating that he needed to turn around to face the officers, Officer Britton testified that defendant abruptly stood up and faced the officers with an aggressive posture. At this point, Officer Ethington partially removed his taser and also told defendant to turn around. Defendant complied. After defendant stood up, Officer Ethington immediately saw a methamphetamine pipe laying on the chair where defendant had been sitting. Officer Ethington testified that he did not see any other drugs or weapons in plain view in the living room at that point.

Defendant was handcuffed and placed on a sofa in the living room. Officers called for back-up, and Officer Ethington asked Kirk if they could perform an officer safety search to make sure that there was nothing in the house that could injure the officers. She agreed. Officer Britton saw the pipe at this point, and found it warm to the touch. Officer Britton also saw several glass pipes on the desk where defendant had been seated. Both defendant and Kirk stated they did not know to whom the pipe belonged.

Defendant was taken into custody for (1) interfering with a police officer, (2) possession of a controlled substance, and (3) frequenting a drug house. Defendant was read his *Miranda* rights. Before placing defendant into the patrol car, Officer Deason searched defendant and found a small quantity of methamphetamine that had been in his pants pockets in a plastic bag. When additional officers arrived, the residence was cleared room-by-room to determine if others

Page 3    Opinion and Order

were present that might pose a hazard to the officers. During the clearing, the officers saw drugs, guns, ammunition, and evidence of drug-trafficking.

At 2:15 a.m on July 17, 2006, Kirk signed a form consenting to a search of her residence at the police station. The government does not rely on Kirk's consent to search to justify the search of defendant's bedroom. Rather, the government relies on the search warrant, which permitted a search for controlled substances and firearms.

Detective Fetters applied for five search warrants that were issued by Clackamas County Circuit Judge Robert Herndon at 7:04 a.m. on July 17, 2006. Each is for a different location, but all include the same language for the property to be seized. The warrants state:

TO ANY POLICE OFFICER IN THE STATE OF OREGON, GREETINGS:

You are hereby commanded to search and seize the following described property:

    [description of property to be searched]

For the following described property including but not limited to:

1.     Any and all scheduled controlled substances, packaging material, scales, paraphernalia, manufacturing equipment, proceeds, and firearms.

2.     Electronic data processing and storage devices, hand held computers such as PDAs, laptop computers, computers and computer systems, central processing units, internal and peripheral storage devices and the information contained within such items as fixed disks, internal and external hard drives, floppy diskettes, tape drives, and tapes, optical data storage devices (CD-ROM's, CD-R's, CD-RW's, DVD's, DVD-R's, and DVD-RW's) or other storage devices or other data storage devices, fixed data storage devices such as Memory sticks and Universal Serial Buse data storage devices, optical readers and related communication devices such as modems, together with system documentation, operating logs and documentation and software instruction manuals, and any and all other software which contains, retrieves, produces and/or otherwise makes available records or documentation of listed crimes, or which is used to maintain records, correspondence, diaries, and/or other writings representing the listed crimes and forensic examination of those items for

        evidence in the electronic form, such as notes, journals, logs, emails, databases, internet records, or any other form not defined herein, but could contain data in an evidentiary form;

3.      Photography equipment including but not limited to; video cameras, Polaroid cameras, digital cameras (including any and all storage devices, ie: removable computer data storage cards), 35 mm cameras and/or other film type cameras, flash units, tripods, and remote triggering devices;

4.      Any and all diaries, notebooks, notes, and any other records and receipts.

And to seize the aforesaid objects of the search and you are further directed to make return of this warrant to me within five (5) days after execution thereof.

Govt's Ex. B. After obtaining the search warrants, the police conducted a thorough search of the residence. During the search pursuant to the warrant, numerous firearms and drugs were discovered.

Defendant was indicted for felon in possession of a firearm and possession of cocaine, methamphetamine, and marijuana, with intent to distribute. Defendant filed the instant motion to suppress on February 20, 2007.

**STANDARDS**

The Fourth Amendment to the United States Constitution secures the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. The amendment applies to the states, and state actors, through the Fourteenth Amendment. *See Wolf v. Colorado*, 338 U.S. 25 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that the prohibition against unreasonable searches and seizures applies to the states); *Mapp*, 367 U.S. at 654-55 (applying the exclusionary rule to the states).

Reasonable searches and seizures usually require the police to have obtained a warrant,

but there are certain exceptions to this warrant requirement. The burden of proof rests on the government to justify the search under one of the exceptions to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). If the government fails to meet this burden, the exclusionary rule generally prohibits the introduction of the evidence at trial. *Elkins v. United States*, 364 U.S. 206, 221-22 (1960). Illegally obtained evidence and all evidence derived from the illegally seized evidence must be excluded. *Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963); *United States v. Patzer*, 277 F.3d 1080, 1086 (9th Cir. 2002).

### 1. Standing

A criminal defendant may invoke the protections of the Fourth Amendment if he can show that he had a legitimate expectation of privacy in the place searched or the item seized. *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

### 2. Consent

Consent to search given freely and voluntarily also waives the protections of the Fourth Amendment and obviates the need for a warrant or for probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The Ninth Circuit considers five factors when determining whether a person has freely consented to a search:

(1) whether defendant was in custody;

(2) whether the arresting officers had their guns drawn;

(3) whether *Miranda* warnings were given;

(4) whether the defendant was told he had the right not to consent; and

(5) whether the defendant was told that a search warrant could be obtained.

Page 6   Opinion and Order

*United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). In *Cormier*, the Ninth Circuit also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must] consider the totality of the circumstances when evaluating consent." *Id*. at 1113.

### 3. Search Warrant

The Fourth Amendment requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." U.S. Const. Amend. IV. "This particularity requirement makes general searches under a warrant impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (internal quotations omitted). "To determine whether a warrant lacks sufficient specificity, we must examine both the warrant's particularity and its breadth." *United States v. Kow*, 58 F.3d 423, 426 (9th Cir. 1995) (citation omitted). "[T]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citations omitted).

Items and information obtained as a result of an invalid search warrant are excluded from evidence. *Mapp*, 367 U.S. at 654-55. This exclusionary rule applies to direct and indirect "fruits" of unlawful searches. *Wong-Sun*, 371 U.S. at 484.

## ANALYSIS

Defendant seeks suppression of the following two types of evidence: (1) all evidence seized pursuant to the search warrant and (2) the methamphetamine pipe on the chair and the

actual methamphetamine seized from defendant's pocket at the time of his arrest, prior to the search warrant.

   1.   **Standing**

At the outset, the government argues that the defendant lacks standing to challenge the search and subsequent seizure of the residence and should be required to testify to establish standing. The government also argues that defendant cannot derivatively challenge the sufficiency of Kirk's consent. The court disagrees.

The evidence clearly establishes that defendant had moved his belongings into the residence and was living there. Defendant paid rent for his share of the home. Defendant had an expectation of privacy in his bedroom and his possessions, and therefore has standing to assert a Fourth Amendment violation. *See United States v. Davis*, 932 F.2d 752, 757 (9th Cir. 1991) (defendant had legitimate expectation of privacy when he had a key, paid rent, stored personal property, and had previously lived in place searched).

Further, the Ninth Circuit has suppressed evidence found during a warrantless entry after the defendant challenged the validity of a third-party consent. *United States v. Oaxaca*, 233 F.3d 1154, 1158 (9th Cir. 2000). As is the case here, the defendant in *Oaxaca* challenged the sufficiency of the consent to search his bedroom given by a co-tenant (the defendant's sister). The court held that the consent to search given by the defendant's sister was invalid, and the fruits of the subsequent search were inadmissible. *Id.* Here, defendant can similarly challenge the validity of the consent given by Kirk.

   2.   **Consent**

Page 8    Opinion and Order

Defendant argues that Kirk's consent to enter the residence was involuntary. The court disagrees.

First, the court notes that the issue is not, as defendant argues, whether Kirk consented to officers searching the residence, but whether she consented for the officers to enter the premises for a non-investigatory purpose. The government makes clear that they did not rely on Kirk's later-signed consent to search the residence, or her disputed verbal consent to search the residence once the officers confronted defendant inside the residence. Instead, the court need only analyze whether Kirk's consent to enter the residence was voluntary.

Kirk was handcuffed and in custody when she consented to the officers' entry into the residence. She had not been read her *Miranda* rights. The officers did not have their guns drawn. Although several of these factors weigh against a finding of voluntariness, the totality of the circumstances indicate that Kirk's consent was voluntary. First, it was Kirk who first requested that she be allowed back into the house to retrieve her shoes. The officers did not suggest entering the residence until she requested that she be allowed to retrieve her shoes. She then stated that she did not need her shoes. The officers advised her that it would not be safe to walk outside and advised her that she would need shoes. Further, she then told the officers "go ahead" and accompanied them into the house to retrieve her shoes. Kirk acquiesced to the officers' request that she retrieve her shoes from the residence. An evaluation of the totality of the circumstances confirms that such acquiescence, coupled with the lack of any coercive police behavior, amounts to voluntary consent to the officers' presence. *See United States v. Griffin*, 530 F.2d 739, 743 (9th Cir. 1976) (holding that the defendant voluntarily consented to entry by opening the door and walking back inside the residence when police did not engage in

"misrepresentation, deception, or trickery").

Once inside the residence with the consent of Kirk, the officers were faced with a rapidly escalating situation. Officer Ethington and Kirk testified that upon seeing defendant sitting at the desk in the living room, Officer Britton asked defendant to stand up. Officer Britton testified that she did not ask defendant to stand up. Even assuming that Officer Britton did ask defendant to stand up, the officers did not exceed their authority in immediately engaging defendant to assess any risks he might pose. The officers were faced with an unidentified individual, his back turned, when Kirk had told the officers that no one was home. By asking defendant to stand up, the officers were confirming that defendant was unarmed and did not pose a safety threat.

As soon as defendant turned around, Officer Ethington testified that he recognized defendant from the informational poster at the police station, linking defendant to firearms. Further, both officers testified that defendant stood aggressively, yelled profanities at them, and bladed his body in an aggressive posture, resulting in Officer Ethington preparing to unholster his taser. When defendant became aggressive, the officers had a right of personal protection to handcuff him.

Once standing, Officer Ethington saw the methamphetamine pipe in plain view on defendant's chair. At this time, defendant's proximity to the pipe established probable cause to arrest him for possession of a controlled substance. His investigatory detention was also reasonable, given his furtive response to the arrival of the officers.

Accordingly, defendant's motion to suppress the evidence seized in plain view at the site of the arrest, as well as the evidence seized incident to defendant's arrest, is denied.

### 3. Search Warrant

Page 10    Opinion and Order

Defendant argues that the search warrant was facially invalid because it failed to state the crime being investigated or otherwise limit the scope of the officers' search, resulting in an exploratory search lacking particularity in violation of the Fourth Amendment. The court agrees.

To determine whether a warrant lacks the requisite particularity, the court must examine the warrant's particularity and its breadth. *Kow*, 58 F.3d at 426. A warrant must describe a specific place to be searched and the things to be seized with sufficient particularity to prevent a general rummaging through a person's property. *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996) (citations omitted).

In *Kow*, the Ninth Circuit held that a warrant that outlined fourteen categories of business records lacked sufficient particularity because the warrant "contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity." 58 F.3d at 427. The *Kow* court took particular issue with the warrant's failure to state the suspected criminal conduct for which the search was based, noting that "[w]e have criticized repeatedly the failure to describe in a warrant the specific criminal activity suspected." *Id.* at 427.

Similarly, in *Bridges* the Ninth Circuit again suppressed evidence based on the lack of particularity in a warrant because the warrant failed to specify the criminal activity associated with the warrant. 344 F.3d at 1018. An attachment to the warrant, incorporated by reference, listed "a comprehensive laundry list of sundry goods and inventory that one would readily expect to discover in any small or medium-sized business in the United States." *Id.* at 1017. The court held that in light of the open-ended language used in the warrant, the "warrant's failure to specify what criminal activity was being investigated, or suspected of having been perpetrated, renders

Page 11    Opinion and Order

its legitimacy constitutionally defective." *Id.* at 1016.

Here, the search warrant makes no reference to the crime being investigated. Instead, the warrant only lists, in broad terms, the items to be searched for. The government claims that the reference to "controlled substances" adequately limits the scope of the search warrant and identifies what conduct is being investigated. However, without either (1) a more definite and limited statement of what the officers were authorized to search for, or (2) a description of the criminal activity being investigated, the search warrant lacks sufficient particularity. While specific categories of evidence are identified by the search warrant, including items commonly associated with drug-trafficking, other categories are overbroad. For example, under number four, the search warrant includes: "[a]ny and all diaries, notebooks, notes, and any other records and receipts." Govt's Ex. B. This category could reasonably include all records and files maintained by any tenant of the residence in question, and without any statement of what crimes are being investigated to narrow the search, leaves the warrant woefully lacking the necessary particularity.

Further, the search warrant includes the disapproved term "including but not limited to" when describing what items are sought. In *Bridges*, the court found the phrase "including but not limited to" especially offensive to the particularity requirement of warrants because "if the scope of the warrant is 'not limited to' the specific records listed on the warrant, it is unclear what is its precise scope or what exactly it is the agents are expected to be looking for during the search." 344 F.3d at 1017-18.

No crime is stated in the warrant, and the scope of what could be seized by the officers was not restricted to contraband. Indeed, the scope was not limited at all, given the use of the

disapproved language "including but not limited to." *See Bridges*, 344 F.3d at 1017-18. Based on *Kow* and *Bridges*, the warrant was facially invalid and the evidence obtained pursuant to it must be suppressed.

The fact that the affidavit in support of the warrant had additional facts concerning suspected crimes cannot save the warrant. First, the validity of a warrant is assessed from within the four corners of the document and will not normally be cured by supporting or attached documents. *Groh*, 540 U.S. at 557. Second, reliance on an affidavit to cure the shortcomings of a warrant is only allowed in narrow circumstances. "The search warrant may be construed with reference to the affidavit for purposes of satisfying the particularity requirement if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporates the affidavit therein." *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982) (citations omitted).

The warrant in this case includes no such language incorporating the affidavit. In addition, there is no evidence that the affidavit accompanied the warrant at the scene. Therefore, the affidavit cannot cure the deficiencies in this warrant.

The government does not respond to the arguments advanced by the defendant regarding the specific deficiencies of the warrant. Instead, the government simply asserts that if the warrant were deficient, the evidence would still be admissible under the good faith exception.

The good faith exception, however, does not apply when a warrant is so facially defective that no reasonable officer could have relied upon it. The good faith exception is only available when there is an objective reasonable basis for the mistaken belief that the warrant was valid." *United States v. Michaelian*, 803 F.2d 1042, 1047 (9th Cir. 1986). A search pursuant to a

warrant lacking sufficient particularity is an error of the police officer and therefore application of the good faith exception is improper. *See Kow*, 58 F.3d at 428 (rejecting good faith exception for warrant that lacked particularity); *Groh*, 540 U.S. at 563-64 (holding that since the particularity requirement is set forth in the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid).

Because the warrant lacked sufficient particularity, the warrant was invalid and all evidence seized pursuant to the warrant must be suppressed.

**CONCLUSION**

Based on the foregoing, the court concludes that the search warrant was facially invalid and all evidence seized pursuant to the search warrant must be suppressed. The motion to suppress is denied as to the remaining evidence, as Kirk gave consent for the officers to enter the residence. Accordingly, defendant's Motion to Suppress Evidence and Statements [14] is GRANTED in part and DENIED in part.

IT IS SO ORDERED

DATED this  18  day of May, 2007.

/s/ ANCER L. HAGGERTY

ANCER L. HAGGERTY
United States District Judge